**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOSEPH O'SHEA, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  25-750** |
| **OCEAN HARBOR CASUALTY**<br>**INSURANCE COMPANY,**<br>    **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by plaintiffs Joseph and Deborah O'Shea (the "O'Sheas"), seeking summary judgment on Ocean Harbor Casualty Insurance Company's ("Ocean Harbor") counterclaim.[1]

### I.    Procedural Background

On March 7, 2025, the O'Sheas filed a Petition for Damages in the 24th Judicial District Court for the State of Louisiana alleging that Ocean Harbor was subject to statutory penalties under La. R.S. 22:1892 for failing to timely remit settlement proceeds after settling a Hurricane Ida insurance claim.[2] The O'Sheas' Petition for Damages included the dollar amount of the settlement agreed to in the underlying property damage claim.[3] Ocean Harbor timely removed the action to the Eastern District of Louisiana on April 16, 2025.[4]

On May 22, 2025, Ocean Harbor filed an Answer and Counterclaims for breach of contract, unjust enrichment, waiver and estoppel, and breach of confidentiality.[5] The

---

[1] R. Doc. 47.
[2] R. Doc. 1-1.
[3] *Id.* at p. 2. ¶ 8.
[4] R. Doc. 1.
[5] R. Doc. 9.

1

O'Sheas moved to dismiss the counterclaims pursuant to Rule 12(b)(6).[6] In response, Ocean Harbor requested and was granted leave to amend and thereafter filed its First Amended and Supplemental Answer and Counterclaims.[7] The Court denied the O'Sheas' first Motion to Dismiss without prejudice.[8] The O'Sheas subsequently filed a second Motion to Dismiss.[9]

In its December 31, 2025 Order, the Court granted the second motion to dismiss in part and denied it in part.[10] The Court held that, at the motion to dismiss stage, Ocean Harbor had sufficiently pleaded the existence and alleged breach of a binding settlement agreement under Louisiana law and denied dismissal of the breach of contract counterclaim.[11] The Court held that the breach of confidentiality counterclaim was duplicative of the breach of contract claim and dismissed it.[12] The Court dismissed the unjust enrichment claim because the existence of a viable contractual remedy precluded recovery under that theory.[13] The Court concluded that waiver and estoppel constituted affirmative defenses rather than independent causes of action and declined to address their sufficiency at the motion-to-dismiss stage.[14] Accordingly, the only remaining claims after the Court's December 31, 2025 Order were the O'Sheas' claim for bad faith penalties under La. R.S. 22:1892 and Ocean Harbor's counterclaim for breach of contract under Louisiana law.

Ocean Harbor then sought summary judgment on the O'Sheas' claims for statutory

---

[6] R. Doc. 11.
[7] R. Doc. 15.
[8] R. Doc. 16.
[9] R. Doc. 18.
[10] R. Doc. 27.
[11] *Id.* at pp. 5-7.
[12] *Id.* at p. 11.
[13] *Id.* at pp. 8-9.
[14] *Id.* at pp. 9-10.

penalties and attorneys' fees under La. R.S. 22:1892, arguing there were no genuine disputes of material fact and it was entitled to judgment as a matter of law.[15] In its February 27, 2026 Order, the Court granted the motion.[16] The Court found that there were no genuine issues of material fact regarding the O'Sheas' bad faith claim for penalties and that as a matter of law Ocean Harbor had not acted arbitrarily, capriciously, or without probable cause with respect to its payment of the settlement proceeds for the underlying action.[17] Consequently, the only remaining claim is Ocean Harbor's counterclaim for breach of contract.

The O'Sheas now seek summary judgment on Ocean Harbor's breach of contract counterclaim. The O'Sheas argue there are no genuine disputes of material fact and they are entitled to judgment in their favor as a matter of law on the counterclaim for breach of contract.[18] In opposition, Ocean Harbor argues genuine disputes of material fact preclude summary judgment, and the O'Sheas are not entitled to judgment as a matter of law.[19] Ocean Harbor argued, in the alternative, that the Motion was premature because Ocean Harbor had not had a meaningful opportunity to conduct discovery essential to its opposition and, therefore, the Court should defer consideration of the Motion under Fed. R. Civ. P. 56(d) until the close of discovery.[20] The O'Sheas filed a Reply in which they opposed Ocean Harbor's request for a deferred ruling.[21] On May 13, 2026, the Court granted Ocean Harbor's request for a deferred ruling and gave the parties leave to file additional supplemental briefing subsequent to the close of discovery.[22] Ocean Harbor

---

[15] R. Doc. 30.
[16] R. Doc. 37.
[17] *Id.* at pp. 11-19.
[18] R. Doc. 47.
[19] R. Doc. 50.
[20] *Id.* at pp. 19-21.
[21] R. Doc. 54
[22] R. Doc. 59.

filed a Supplemental Memorandum in Opposition, and the O'Sheas filed a Supplemental Memorandum in Support.[23] Ocean Harbor later sought leave to file a sur-reply, which the Court granted.[24]

## II.   Disputed and Undisputed Facts

The following undisputed facts are taken from the O'Sheas' Statement of Undisputed Material Facts[25] and Ocean Harbor's Responses thereto.[26]

On October 28, 2024, Ocean Harbor's counsel memorialized settlement terms for the underlying dispute in writing, confirmed the settlement amount, and requested additional information (including lienholder confirmation, payee information, tax forms), while also asserting Ocean Harbor "does not consider" the thirty-day payment period to begin until it received the requested information.[27] On October 29, 2024, the O'Sheas' counsel confirmed acceptance of the settlement and advised the requested information would be provided.[28] On October 29, 2024, the O'Sheas' counsel's office provided payment instructions, confirmed there was no mortgage, and transmitted counsel's W-9.[29] On October 30, 2024, Ocean Harbor, through counsel, provided the O'Sheas' counsel with a draft of the Receipt, Release, Indemnity, and Confidentiality Agreement, which were explicitly described as "proposed settlement documents for this

---

[23] R. Docs. 86, 88. In Ocean Harbor's Supplemental Memorandum, it in effect sought summary judgment in its favor on certain elements of its counterclaim under Fed. R. Civ. P. 56(f). R. Doc. 86 at p. 1. Ocean Harbor's request for summary judgment is, in effect, a cross-motion for summary judgment. Such a request is untimely, as the deadline for dispositive motions was July 16, 2026. R. Doc. 49 at p. 9. Ocean Harbor's Supplemental Opposition was filed on July 20, 2026. R. Doc. 86. The Court will not convert the supplemental opposition into a cross-motion for summary judgment. Even if the Court were to consider Ocean Harbor's supplemental opposition as a cross-motion for summary judgment on its counterclaim, the Court would deny the cross-motion as the undisputed facts establish the O'Sheas are entitled to summary judgment in their favor.

[24] *See* R. Docs. 90-92.

[25] R. Doc. 47-2.

[26] R. Doc. 50-1.

[27] R. Doc. 47-2 at p. 1 ¶ 1; R. Doc. 86-1 at p. 1 ¶ 1.

[28] R. Doc 47-2 at p. 1 ¶ 2; R. Doc. 86-1 at p. 1 ¶ 2.

[29] R. Doc. 47-2 at p. 2 ¶ 3; R. Doc. 86-1 at p. 2 ¶ 3.

matter."[30]

On November 5, 2024, the legal administrator for the O'Sheas' counsel's law firm communicated to counsel for Ocean Harbor that "the proposed settlement documents for this matter are approved."[31] Neither plaintiff signed the proposed settlement agreement or release on November 5, 2024.[32] On or around May 5, 2025, the O'Sheas objected to the release provisions related to release of any claims arising after October 29, 2024.[33]

The O'Sheas filed the instant action on March 7, 2025, in the 24th Judicial District Court for the Parish of Jefferson, asserting claims related to the timing of payment and seeking bad faith penalties and attorneys' fees under La. R.S. 22:1892.[34] The action was timely removed to this Court. As of March 7, 2025, the O'Sheas had not signed the written release or settlement agreement on which Ocean Harbor bases its counterclaim.[35] The release was not signed and notarized by the O'Sheas until May 15, 2025.[36] Since the O'Sheas executed the release, the O'Sheas have not publicly disseminated the confidential settlement amount.[37]

The May 15, 2025 release was executed well after this lawsuit was filed.[38] Ocean Harbor alleges in its counterclaim that the O'Sheas breached the November 5, 2024 settlement agreement by filing this lawsuit.[39] Ocean Harbor also alleges in its counterclaim that the O'Sheas breached the November 5, 2024 settlement agreement by

---

[30] R. Doc. 47-2 at p. 2 ¶ 4; R. Doc. 86-1 at p. 2 ¶ 4.
[31] R. Doc. 47-2 at p. 2 ¶ 5; R. Doc. 86-1 at p. 2 ¶ 5.
[32] R. Doc. 47-2 at p. 2 ¶ 6; R. Doc. 86-1 at p. 2 ¶ 6.
[33] R. Doc. 47-2 at p. 2 ¶ 7; R. Doc. 86-1 at p. 2 ¶ 7.
[34] R. Doc. 47-2 at p. 2 ¶ 8; R. Doc. 86-1 at p. 2 ¶ 8.
[35] R. Doc. 47-2 at p. 2 ¶ 9; R. Doc. 86-1 at p. 2 ¶ 9.
[36] R. Doc. 47-2 at p. 3 ¶ 10; R. Doc. 86-1 at p. 2 ¶ 10.
[37] R. Doc. 47-2 at p. 3 ¶ 11; R. Doc. 86-1 at pp. 2-3 ¶ 11.
[38] R. Doc. 47-2 at p. 3 ¶ 12; R. Doc. 86-1 at p. 3 ¶ 12.
[39] R. Doc. 47-2 at p. 3 ¶ 13; R. Doc. 86-1 at p. 3 ¶ 13.

disclosing settlement-related information in the pleadings filed in this action.[40] The release contains language stating that "Plaintiffs and their attorneys agree that in exchange for the valuable consideration of ONE DOLLAR ($1.00) of the payment made herewith is the avoidance of adverse publicity[.]"[41] The release contains language stating that "Plaintiffs further state that they have read the foregoing Release, the contents and consequences of which they fully understand, and they will sign their name as their own free agents and of their own free will and accord."[42] The release does not contain a general fee-shifting provision awarding to Ocean Harbor its attorneys' fees and litigation costs for an alleged breach of the confidentiality or adverse-publicity language.[43] In its counterclaim, Ocean Harbor seeks damages including attorneys' fees, litigation costs, reputational harm, and consequential damages.[44]

The only fact Ocean Haror disputes is whether it suffered any specific lost business, lost revenue, or other quantified economic loss allegedly caused by the O'Sheas' filing of this lawsuit or by the alleged breach of contract.[45]

For clarity, the Court will refer to the release allegedly in place prior to the filing of the instant suit as the "November Release" and the release which the O'Sheas executed on May 15, 2025 as the "May Release."

## LEGAL STANDARD

### I.    Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[40] R. Doc. 47-2 at p. 3 ¶ 14; R. Doc. 86-1 at p. 3 ¶ 14.
[41] R. Doc. 47-2 at p. 3 ¶ 15; R. Doc. 86-1 at p. 3 ¶ 15.
[42] R. Doc. 47-2 at p. 3 ¶ 16; R. Doc. 86-1 at p. 3 ¶ 16.
[43] R. Doc. 47-2 at p. 3 ¶ 17; R. Doc. 86-1 at p. 3 ¶ 17.
[44] R. Doc. 47-2 at p. 3 ¶ 18; R. Doc. 86-1 at p. 3 ¶ 18.
[45] R. Doc. 47-2 at p. 4 ¶ 19; R. Doc. 86-1 at p. 3 ¶ 19.

of law."[46] "An issue is material if its resolution could affect the outcome of the action."[47] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[48] All reasonable inferences are drawn in favor of the nonmoving party.[49] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[50] Summary judgment may be granted upon motion under Rule 56(a) or in favor of a nonmovant under Rule 56(f).

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[51] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[52]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of

---

[46] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[47] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[48] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[49] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[50] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[51] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[52] *Celotex*, 477 U.S. at 322-24.

production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[53] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[54] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[55] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[56] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary[.]"[57] "Summary judgment should be granted if the nonmoving

---

[53] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[54] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

[55] *Celotex*, 477 U.S. at 332-33.

[56] *Id.*

[57] *Id.* at 332-33 & n.3.

party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[58]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[59]

## LAW AND ANALYSIS

The O'Sheas move for summary judgment on Ocean Harbor's counterclaim for breach of contract under Louisiana law. In order to recover for breach of contract, a party must prove, by a preponderance of the evidence, the following elements: "(1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee."[60] The O'Sheas argue the undisputed material facts establish that Ocean Harbor does not have factual support for at least two of the elements essential to its counterclaim and, as a result, the O'Sheas are entitled to summary judgment. In particular, the O'Sheas argue the undisputed facts establish that (1) no enforceable contract existed between the parties prior to the filing of this action on March 7, 2025 and (2) Ocean Harbor suffered no actionable damages stemming from the O'Sheas' alleged breach.[61] Ocean Harbor has the

---

[58] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[59] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[60] *Deep S. Commc'ns, LLC v. Fellegy*, 652 F. Supp. 3d 636, 664 (M.D. La. 2023) (quoting *RAMJ Constr., L.L.C. v. Seola Enterprises, Inc.*, No. 17-01789, 2018 WL 3232781, at *2 (M.D. La. July 2, 2018)).
[61] R. Doc. 47 at pp 1-2.

burden to provide factual support sufficient to establish the existence of a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Ocean Harbor argues the facts establish (1) an enforceable contract between the parties had formed prior to the filing of the instant action on March 7, 2025 and (2) the O'Sheas breached the contract by their failure to execute the agreed-upon settlement documents, their initiation of new litigation based on released claims, or their disclosure of the confidential settlement amount in their state court petition.[62] Ocean Harbor argues it has produced factual support sufficient to show there are material facts in dispute with respect to whether it suffered actionable damages stemming from the O'Sheas' alleged breach. As a result, Ocean Harbor argues the O'Sheas are not entitled to summary judgment on the counterclaim. [63]

## I.    The November Release constitutes a binding contract under Louisiana law.

The undisputed facts relevant to the question of contract formation are these. On October 28, 2024, Ocean Harbor's counsel memorialized settlement terms for the underlying dispute in writing and confirmed the settlement amount in the below email sent from Lena Giangrosso, counsel for Ocean Harbor, to Landis Prestigiacomo and Mark Montiel, counsel for the O'Sheas:

> Good afternoon, Landis. Please allow this to confirm our telephone conversation in which I advised you that Ocean Harbor has authorized me to accept plaintiffs' demand of [redacted] in new money in full and final settlement of all claims against Ocean Harbor. [64]

The next day, Ms. Prestigiacomo confirmed acceptance of the settlement in an email to

---

[62] Under the terms of the November Release, the O'Sheas agree to "keep and maintain the terms of this Agreement, including but not limited to the amount of any sums received through compromise, confidential . . . ." R. Doc. 30-4 at pp. 8-9.

[63] *See* R. Doc. 9 at pp. 20-21.

[64] R. Doc. 30-4 at p. 1; R. Doc. 47-2 at p. 1 ¶ 1; R. Doc. 86-1 at p. 1 ¶ 1.

Ms. Giangrosso and Mr. Montiel:

> Our clients accept. It was a pleasure working with you on this one. Britt [counsel's paralegal] will send you all the check information.[65]

The day after, October 30, 2024, Ms. Giangrosso, emailed Ms. Prestigiacomo and Mr. Montiel sending the November Release and the message:

> Landis, please see attached proposed settlement documents for this matter. Please review same and advise as to any proposed edits or additions. Please also confirm that Plaintiffs were never represented by MMA. If they were, there is additional language we will need to add to the release.[66]

On November 5, 2024, Brittany Roy, the paralegal for the O'Sheas' counsel's law firm, replied to that message with an email sent directly to Ms. Giangrosso, as well as to the O'Sheas' counsel, Ms. Prestigiacomo and Mr. Montiel:

> The proposed settlement documents for this matter are approved. Plaintiffs were never represented by MMA. Thank you![67]

As of March 7, 2025—the day the O'Sheas filed the instant suit—the O'Sheas had not signed the November Release.[68] In early May, 2025, the O'Sheas objected to the release provision regarding their release of claims arising after October 29, 2024.[69] With the revisions made, the O'Sheas signed and notarized the release on May 15, 2025.[70]

The Civil Code provision relevant to the question of formation of a contract is:

> **Article 1927. Consent.** A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
>
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which

---

[65] R. Doc. 30-4 at p. 2; R. Doc 47-2 at p. 1 ¶ 2; R. Doc. 86-1 at p. 1 ¶ 2.

[66] R. Doc. 30-4 at p. 4; R. Doc. 47-2 at p. 2 ¶ 4; R. Doc. 86-1 at p. 2 ¶ 4.

[67] R. Doc. 30-4 at p. 5; R. Doc. 47-2 at p. 2 ¶ 5; R. Doc. 86-1 at p. 2 ¶ 5.

[68] R. Doc. 47-2 at p. 2 ¶ 9; R. Doc. 86-1 at p. 2 ¶ 9.

[69] R. Doc. 47-2 at p. 2 ¶ 7; R. Doc. 86-1 at p. 2 ¶ 7. The November Release includes a provision releasing "any claim to penalties and/or attorney's fees under Louisiana Revised Statutes 22:1973 and/or § 22:1892." R. Doc. 30-4 at pp. 7-8.

[70] R. Doc. 47-2 at p. 3 ¶ 10; R. Doc. 86-1 at p. 2 ¶ 10.

the acceptance is made.

Under Louisiana law, a settlement agreement is referred to as a "compromise." The relevant Civil Code articles on compromise are:

> **Article 3071. Compromise; definition.** A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.

> **Article 3072. Formal requirements; effects.** A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.

> **Article 3073. Capacity and form.** When a compromise effects a transfer or renunciation of rights, the parties shall have the capacity, and the contract shall meet the requirement of form, prescribed for the transfer or renunciation.

> **Article 3078. After-acquired rights.** A compromise does not affect rights subsequently acquired by a party, unless those rights are expressly included in the agreement.

Though a compromise must be reduced to writing, the writing need not be contained in a single instrument.[71] "When two instruments, read together, constitute a written compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, they are an enforceable compromise agreement under La. Civ. Code Art. 3071."[72] Furthermore, "if a law requires a record to be in writing, an electronic record satisfies the law."[73] "A signature on an e-mail may constitute a valid electronic signature, provided the signature was made with the intent to sign the record."[74]

In its supplemental opposition to the O'Sheas' motion for summary judgment,

---

[71] LA. CIV. CODE ANN art. 3072 cmt. c (2024).

[72] *DeSoto v. DeSoto*, 694 So. 2nd 1043, 1045 (La. App. 5 Cir. 1998). *See also*, *Parich v. State Farm Mut. Auto. Ins. Co.*, 919 F.2d 906, 913 (5th Cir. 1990) (the writing requirement of Article 3072 does not mean . . . that everything intended to be compromised must be contained in one document.").

[73] LA. REV. STAT. § 9:2607(c) (2025). The statute defines "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." LA. REV. STAT. § 9:2602(8) (2025).

[74] *Mack Energy Co. v. Red Stick Energy, LLC*, No. CV 16-1696, 2020 WL 13260416 at *3 (W.D. La. Mar. 19, 2020) (citing La. R.S. § 92602(8)).

12

Ocean Harbor provides competent summary judgment evidence that the O'Sheas had authorized their counsel to negotiate and finalize a settlement on their behalf.[75] Plaintiff Deborah O'Shea testified at her deposition that she had authorized their counsel to authorize and negotiate a settlement on her behalf, including any documents or terms for that settlement.[76] Plaintiff Joseph O'Shea likewise testified at his deposition that their counsel were authorized to agree to any of the terms necessary for the settlement documents.[77] The O'Sheas have not disputed that their counsel had authority to agree to the terms of the November Release.[78]

It does not matter that the signatures of the parties' counsel are in different emails. Louisiana courts have found that a binding compromise may arise from multiple electronic records, so long as the terms of the compromise themselves are reduced to writing. In *Dozier v. Rhodius* the Louisiana First Circuit Court of Appeal upheld a trial court's finding that a compromise existed, despite the plaintiff in that case not having signed the compromise agreement.[79] In that case, the plaintiff had given express authority to his counsel to settle the case, and his counsel exchanged emails with counsel for the defendant laying out terms of the agreement in writing and expressing assent to those terms.[80] The Louisiana First Circuit found that the formal requirements of Article 3072 were satisfied across the separate emails because, when read together, they "outline each party's obligations to the other and evidence each party's acquiescence in the

---

[75] R. Doc. 86 at p. 13.
[76] R. Doc. 86-3 pp. 13:18-14:2.
[77] R. Doc. 86-4 pp. 33:20-34:7.
[78] *See* R. Doc. 88.
[79] *Dozier v. Rhodus*, 2008-1813 (La. App. 1 Cir. 5/5/09), 17 So. 3d 402, 409.
[80] *Id.* at 405-6.

agreement."[81] Conversely, in *Porche v. Porche*, the Louisiana Fifth Circuit Court of Appeal found that an offer and acceptance spread across separate emails and texts failed to meet the formal requirements of Article 3072, not because the electronic communications could not attest to offer and acceptance, but rather because the emails and documents exchanged, when read together, did not clearly outline the obligations to each other and the parties mutual intent to end their dispute, and furthermore no written settlement document was even provided to the court for review.[82]

Louisiana courts have offered clear guidance as to when email communications manifest offer and acceptance. In *Martin v. State Farm Fire and Casualty Insurance Company*, the Louisiana Fourth Circuit Court of Appeal found that when a plaintiff's counsel responded via email to a defendant's settlement offer with the message "confirmed" there was "a valid compromise on its face."[83] Likewise, in *Preston Law Firm, L.L.C. v. Mariner Health Care Management Co.*, the United States Fifth Circuit Court of Appeals found an enforceable compromise when one party emailed the other a list of material terms, and the other party responded that it "agreed to" those terms.[84] Contrast those email compromises with the case cited by the O'Sheas, *Armstrong v. Armstrong*.[85] In that case, the parties had exchanged several revisions to a settlement agreement via email.[86] When the agreement appeared to be reaching its final form, the plaintiffs' counsel

---

[81] *Id.* at 409. *See also*, *Parich v. State Farm Mut. Auto. Ins. Co.*, 919 F.2d 906, 913 (5th Cir. 1990) (the writing requirement of Article 3072 does not mean . . . that everything intended to be compromised must be contained in one document."); *DeSoto v. DeSoto*, 694 So. 2nd 1043, 1045 (La. App. 5 Cir. 1998).

[82] *Porche v. Porche*, 23-471 (La. App. 5 Cir. 4/24/24), 386 So. 3d 695, 698 and 705-706.

[83] *Martin v. State Farm Fire & Cas. Co.*, 2025-0231 (La. App. 4 Cir. 2/4/26) 2026 WL 294959 at *3-4.

[84] *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 391 (5th Cir. 2010). *See also, id.* ("The March 24 Email and the August 9 Email combine to form a valid compromise under the law.").

[85] See R. Doc. 88 at p. 8; *Armstrong v. Armstrong*, No. CV 23-1093, 2024 WL 5495291 (E.D. La. Nov. 22, 2024), *report and recommendation adopted*, No. CV 23-1093, 2025 WL 1104032 (E.D. La. Apr. 14, 2025).

[86] *Id.* at *1.

asked defense counsel whether "the agreement is ready for signatures?"[87] Counsel for the defendant replied: "Attached is the settlement agreement with the formatting revisions you requested. *I believe it is ready for signatures*."[88]  The magistrate judge in *Armstrong* recommended the communication be found insufficient for a binding compromise, as the words "I believe [the agreement] is ready for signatures" did *not* manifest the defense counsel's intent for the email to act as a "substitute for a signature."[89] In contrast, in this case the written communication stated, "[t]he proposed settlement documents for this matter are approved."[90]

The other cases the O'Sheas cite do not compel any different reading of Louisiana law. The O'Sheas cite to *Bourgeois v. Franklin*, in which the Louisiana Supreme Court ruled a compromise was unenforceable because it had not been reduced to writing and had instead been recited in open court.[91] But that case is distinguishable on its facts—it dealt with a compromise settlement recited in open court without any writing—and has been overruled by statute as it interpreted a now-superseded version of Article 3072 and the current version of the article explicitly allows for settlement agreements recited in open court.[92] The O'Sheas also cite also to *Plant-N-Power Services, Inc. v. JRE Field Services* for the proposition that Article 3072 contains an implicit signature requirement.[93] In that case, the plaintiff sued to enforce a written settlement agreement

---

[87] *Id.*
[88] *Id.*
[89] *Id.* at *2.
[90] R. Doc. 30-4 at p. 5.
[91] *Bourgeois v. Franklin*, 389 So.2d 358, 361 (La. 1980); R. Doc. 47-1 at p. 5.
[92] *See* LA. CIV. CODE art. 3079 (2024); *Kfoury v. Coupel*, 2010-1254 (La. App. 1 Cir. 2/11/11) 2011 WL 766960 at *2-3 (discussing legislative history of Article 3072). The O'Sheas' reliance on *Jasmin v. Gafney, Inc.*, 357 So.2d 539 (La. 1978) and *Singleton v. Bunge Corp.*, 364 So.2d 1321 (La. App. 4th Cir. 1978) is misplaced for the same reason.
[93] *Plant-N-Power Servs., Inc. v. JRE Field Servs., LLC*, 2022-1225 (La. App. 1 Cir. 5/31/23), 369 So. 3d 12; R. Doc. 47-1 at p. 2.

against an entity that alleged it had not signed the agreement.[94] The issue before the court was whether a written contract could be enforced against an entity that was not a party.[95] The case did not involve whether a binding settlement agreement can be formed by emails between the parties.[96]

Under Louisiana law, a binding compromise was formed between the parties in this action as of the November 5, 2024 email from the O'Sheas' counsel's paralegal to Ocean Harbor's counsel.[97] The exchange attests to the offer and acceptance necessary to form a contract.[98] On October 30, 2024, counsel for Ocean Harbor sent the November Release to the O'Sheas' counsel with the message, "please see attached proposal settlement documents for this matter. Please review same and advise as to any proposed edits or additions."[99] A week later, the O'Sheas' counsel's paralegal replied with neither edits nor revisions, instead relaying the message "[t]he proposed settlement documents for this matter are approved . . . Thank you!"[100] Like the emails in *Martin* and *Preston Law Firm*—and unlike the email in *Armstrong*—this email communication indicates assent to the documents contained therein as they are. The O'Sheas' counsel also were recipients of that email.[101] Neither the O'Sheas nor their counsel have represented that they did not have authority to agree to the terms of the November Release.[102]

The November Release also meets the formal requirements of a compromise as

---

[94] *Plant-N-Power*, 369 So. 3d at 29-31.
[95] *Id.*
[96] *Id.*
[97] *See* R. Doc. 30-4 at p. 5.
[98] *See* LA. CIV. CODE art. 1927 (2024).
[99] R. Doc. 30-4 at p. 4.
[100] R. Doc. 30-4 at p. 5.
[101] *See id.*
[102] *See* R. Doc. 30-5 at pp. 13-14. Furthermore, O'Sheas and their counsel acted as if they were under the terms of a binding contract in accepting and depositing the settlement checks on January 18, 2025. *Compare* R. Doc. 30-1 at pp. 6-7, ¶¶ 22-23, *with* R. Doc. 33-1 at pp. 3-4, ¶¶ 22-23.

recited in Article 3072 of the Civil Code. The agreement to which the parties agreed had been reduced to writing and provided to all counsel.[103] Moreover, unlike the *Porche* case, the written agreement was attached to the email chain.[104] The paralegal's email signature constitutes a valid signature with legal effect on behalf of the law firm, and sent to all counsel.[105] That the email signature appears on a different document than the written compromise does not invalidate its legal effect under the Civil Code, as the writing requirement of Article 3072 need not be satisfied in a single instrument.[106] Louisiana courts have been consistent in that "[a]n exchange of emails can constitute a compromise agreement."[107] Such is the case here.

Finally, the O'Sheas thereafter accepted the settlement funds by cashing the Ocean Harbor checks and depositing the funds in their accounts,[108] thereby corroborating that they had agreed to the terms of the November Release. Under the Civil Code, "[a] compromise is also made when the claimant of a disputed or unliquidated claim, regardless of the extent of his claim, accepts a payment that the other party tenders with the clearly expressed written condition that acceptance of the payment will extinguish the obligation."[109] Further, even if the O'Sheas argue that either their counsel or their counsel's paralegal lacked the authority to bind them to the November Release, they could still be bound to it under Article 1843, which reads as follows: "Ratification is a

---

[103] *See* LA. CIV. CODE ANN art. 3072 cmt. a (2024); R. Doc. 30-4 pp. 6-10.

[104] *See* R. Doc. 30-4 at p. 5; *Porche v. Porche*, 23-471 (La. App. 5 Cir. 4/24/24), 386 So. 3d 695, 698 and 705-706.

[105] *See* R. Doc. 30-4 at p. 5; LA. REV. STAT. § 9:2607(c) (2025). The statute defines "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." LA. REV. STAT. § 9:2602(8) (2025).

[106] LA. CIV. CODE ANN art. 3072 cmt. c (2024); *Dozier v. Rhodus*, 2008-1813 (La. App. 1 Cir. 5/5/09), 17 So. 3d 402, 409; *Parich v. State Farm Mut. Auto. Ins. Co.*, 919 F.2d 906, 913 (5th Cir. 1990) (the writing requirement of Article 3072 does not mean . . . that everything intended to be compromised must be contained in one document."); *DeSoto v. DeSoto*, 694 So. 2nd 1043, 1045 (La. App. 5 Cir. 1998).

[107] *Martin v. State Farm Fire & Cas. Co.*, 2025-0231 (La. App. 4 Cir. 2/4/26) 2026 WL 294959 at *2.

[108] *Compare* R. Doc. 30-1 at pp. 6-7, ¶¶ 22-23, *with* R. Doc. 33-1 at pp. 3-4, ¶¶ 22-23.

[109] LA. CIV. CODE art. 3079 (2024).

declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority . . . Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation."[110] The November 5 email exchange constitutes written acceptance of Ocean Harbor's offer as reduced to writing in the November Release. If the O'Sheas' counsel and paralegal *had* settlement authority, but the November 5 email for any reason did not constitute valid acceptance, then the O'Sheas' receipt and retention of the settlement funds in January 2025 would make the November Release enforceable under Civil Code Article 3079. If the O'Sheas' counsel or paralegal did *not* have settlement authority, then the O'Sheas' retention of the settlement funds in January 2025 would constitute a tacit ratification of the November Release under Civil Code Article 1843. Either way, the November Release was enforceable against the O'Sheas prior to the filing of the instant suit in March of 2025.

The O'Sheas were bound by the terms of the November Release. The undisputed facts show they breached the release in at least two ways. First, the disclosure of the settlement amount in the state court petition constitutes a breach of the November Release. In the November Release, the O'Sheas agreed "that they . . . shall keep and maintain the terms of this Agreement, including but not limited to the amount of any sums received through compromise, confidential[.]"[111] On March 7, 2025, the O'Sheas filed their Petition for Damages.[112] The petition stated the dollar amount of the settlement.[113] Since the O'Sheas had agreed in the November Release to keep that amount confidential, the O'Sheas' state court petition constitutes a facial breach of the November

---

[110] LA. CIV. CODE art. 1843 (2024).
[111] R. Doc. 30-4 at p. 8.
[112] R. Doc. 1-1.
[113] *Id.* at p. 2. ¶ 8.

Release.

Second, that the O'Sheas sought recovery for the released claims for penalties itself constitutes a breach of the November Release. In the instant suit, the O'Sheas seek recovery for penalties, costs, and attorneys' fees under La. R.S. § 1973 and La. R.S. § 22:1892 for rights they claim to have acquired after the date of the November Release when Ocean Harbor failed to pay within thirty days of the settlement. While releases of future claims are to be "narrowly construed to assure that the parties fully understand the rights released and the resulting consequences,"[114] the November Release is unambiguous on this point under any construction. The agreement provides that the O'Sheas "release and forever discharge" Ocean Harbor "of and from any and all rights, claims, liens, remedies, or causes of action of whatever nature which they now have, or which they, their heirs, successors, assigns, or legal representatives *may thereafter acquire*, for the aforementioned claims, including but not limited to those for mental anguish, *penalties*, litigation costs and any claim for *penalties and/or attorney's fees under Louisiana Revised Statutes § 22:1973 and/or § 22:1892*."[115] The Civil Code allows a compromise to affect rights subsequently acquired when those rights are expressly included in the agreement.[116] Thus, the O'Sheas facially breached the November Release, first, when they filed the instant suit pursuing bad faith penalties under La. R.S. § 22:1892 and, second, when they included the amount they had received in the compromise.[117]

---

[114] *Boudreaux v. Axiall Corp.* 595 F.Supp.3d 517, 527 (W.D. La. 2022) (quoting *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 637 (5th Cir. 2002)).
[115] R. Doc. 30-4 at p. 7 (emphasis added).
[116] LA. CIV. CODE art. 3078 (2024).
[117] The May Release explicitly revised this provision to only release claims under La. R.S. § 22:1892 "that were brought or could have been brought prior to October 29, 2024." R. Doc. 30-6 at 12. However, as the Court has found, O'Sheas were bound by the terms of the November Release as of their filing of the instant suit in March. The Parties did not object to the aforementioned language until early May of 2025, two months after they filed suit seeking statutory penalties under La. R.S. § 22:1892. R. Doc. 30-5 at pp. 13-14.

19

**II.     At trial, Ocean Harbor will not be able to meet its burden of proving damages stemming from the breach.**

The Court has found that the undisputed facts show that a contract was formed between the O'Sheas and Ocean Harbor. At trial Ocean Harbor will bear the burden of proving that the O'Sheas breach of the contract caused it damages. To survive summary judgment Ocean Harbor must call the court's attention to supporting evidence already in the record proving that the breach of the contract caused it damage but that was overlooked or ignored by the O'Sheas or that a genuine issue of material fact exists as to whether Ocean Harbor suffered damage because of the breach.[118]

Ocean Harbor argues it has met this burden and the O'Sheas' motion should be denied either because it produced supporting evidence to show that it suffered damages or because there are material factual disputes as to whether it suffered damage.[119] Ocean Harbor's theory is that the O'Sheas' breach of contract—their failure to execute the November Release, their filing of the instant suit seeking recovery for released claims, and their public disclosure of the confidential settlement amount—caused it damage in the amount of $71,090.75 in litigation expenses.[120] In support of their argument, Ocean Harbor produced an affidavit of one of its employees who attached records of the litigation expenses Ocean Harbor incurred from January 1, 2025 to June 30, 2026.[121] Ocean Harbor argues these expenses arose as a direct result of the O'Sheas' failure to perform their obligations under the settlement agreement and that, as a result, these litigation expenses are a distinct form of contractual damages, *not* a request for an award of attorneys' fees.[122]

---

[118] *See Deep S. Commc'ns, LLC v. Fellegy*, 652 F. Supp. 3d 636, 664 (M.D. La. 2023) (reciting elements for a Louisiana breach of contract claim).
[119] R. Doc. 86 at pp. 21-225.
[120] R. Doc. 86 at p. 21.
[121] R. Doc. 86-7 at p. 1.
[122] R. Doc. 86 at pp. 22-26.

In response, the O'Sheas argue that litigation expenses do not constitute recoverable damages for breach of contract under Louisiana law.[123]

Article 1994 of the Louisiana Civil Code states: "An obligor is liable for the damages caused by his failure to perform a conventional obligation."[124] A "failure to perform" can result from the obligor's "nonperformance, defective performance, or delay in performance."[125] In breach of contract claims, "Louisiana courts have long held that attorney's fees are not allowed except where authorized by statute or contract."[126]

Ocean Harbor does not contend the November Release contained any contractual term authorizing attorneys' fees as damages to the prevailing party in a dispute. Instead, Ocean Harbor argues Article 1994 of the Civil Code authorizes the award because such recovery would be "pursuant to the parties' express contractual obligations and for the direct losses caused by Plaintiffs' breach of those obligations."[127] Under Ocean Harbor's theory, since it incurred these litigation expenses "enforcing the confidentiality covenant and addressing the Plaintiffs' failure to execute," those expenses are "direct losses caused by breach[.]"[128]

In *Sher v. Lafayette Ins. Co.*, the Louisiana Supreme Court ruled that Article 1997—which defines the scope of damages for an obligor's bad faith failure to perform a contractual obligation—does not provide statutory authorization for an award of attorneys' fees as damages and Louisiana courts have long held that attorneys' fees are not allowed except where authorized by statute or contract.[129] In *Homestead Insurance*

---

[123] R. Doc. 88 at pp. 12-13.
[124] LA. CIV. CODE art. 1994 (2024).
[125] *Id.*
[126] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 201.
[127] R. Doc. 86 at p. 23.
[128] *Id.*
[129] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 201.

*Company v. Guarantee Mutual Life Company*, the Fifth Circuit Court of Appeals, interpreting *Sher*, agreed that, under Louisiana law, attorney's fees characterized as breach of contract damages are not compensable under Article 1994 and its corresponding statutes.[130] Since the function of Article 1997 is to "develop" the contract principles outlined in Articles 1994 and 1995, "the inexorable conclusion" of the *Sher* court's logic is that "Articles 1994 *et seq.* may not provide statutory authorization for an award of attorney's fees as an element of breach of contract damages."[131] Though *Homestead Insurance Company* is unpublished, and therefore not binding, it remains persuasive authority; moreover, its reasoning is in keeping with both the text of Article 1994 and the reasoning of the Louisiana Supreme Court. Accordingly, Civil Code Article 1994 does not provide statutory authorization for an award of attorneys' fees as breach of contract damages.[132] Ocean Harbor's argument that its litigation expenses ensuing from the O'Sheas' breach constitute recoverable damages fails as a matter of law.

Ocean Harbor's remaining damages claim stems from potential losses it incurred as a result of the O'Sheas' breach of the confidentiality provision. Absent litigation expenses, Ocean Harbor has not produced a single piece of evidence to prove any damages attributable to this or any other breach.[133] At best, Ocean Harbor presents a deposition from its claims examiner, Shelley Andrews, who testified under oath that the amount of damages stemming from the breach of confidentiality are currently "under investigation."[134] Discovery has closed in this case and the trial is set in September. Ocean

---

[130] *Homestead Ins. Co. v. Guarantee Mut. Life Co.*, 459 F. App'x 398, 405 (5th Cir. 2012).
[131] *Id.* at 405.
[132] *See* LA. CIV. CODE art. 1994 (2024); *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 201; *Homestead Ins. Co. v. Guarantee Mut. Life Co.*, 459 F. App'x 398, 405 (5th Cir. 2012).
[133] *See* R. Doc. 86.
[134] R. Doc. 86-6 at 20:8-15. Regarding damages resulting from the breach of confidentiality, Ms. Andrews testified: "We're still investigating that, trying to compile that. It's like a real time type of clock going on because there's so many outstanding policies and it's changing. So I requested the information. It is being

22

Harbor will not be given an additional opportunity to respond to the motion for summary judgment.[135]

"Actual damages arising from a breach of contract must be proven; they cannot be merely speculative or conjectural."[136] Although "[t]he sufficiency of proof of damages must be determined in relation to the particular contract at issue and the circumstances surrounding its breach[,]"[137] "the lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award."[138]

Ocean Harbor's evidence of damages resulting from the O'Sheas' breach of the confidentiality provision lacks the minimal degree of detail or specificity required and amounts to no more than speculation or conjecture. Though a precise figure of monetary damages for a breach of confidentiality may be difficult to precisely determine, in order to prevail at summary judgment Ocean Harbor, nonetheless, must be able to point to some competent evidence upon which to base its damages claim.[139] After the close of the discovery period, the averred existence of an ongoing investigation into potential damages is insufficient to support a claim for damages.[140]

In its Sur-Reply, Ocean Harbor makes one final argument: even if it cannot establish actual pecuniary damages, it may still prevail at trial with an award of nominal damages.[141] Ocean Harbor contends that some Louisiana courts have awarded nominal

---

investigated. But I haven't received any type of documentation that I can share with you as far as those. It's still being requested."

[135] *See* R. Doc. 49 at 9.

[136] *Hall v. Arkansas-Louisiana Gas Co.*, 368 So.2d 984, 991 (La.1979) *aff'd in part, vacated in part*, 453 U.S. 571 (1981) (citing *Brown v. Producers' Oil Co.*, 134 La. 672, 64 So. 674 (1914)). *See also, Leblanc v. Gibbens Pools, Inc.* 447 So.2d 1195, 1197 (La. App. 5 Cir. 1984) (applying same).

[137] *Id.*

[138] *Campbell v. Lelong Tr.*, 327 So. 2d 533 (La. App. 2d Cir. 1976) (citing *Casadaban v. Bel Chemical & Supply Company, Inc.*, 322 So.2d 854 (La. App., 1 Cir. 1975).

[139] *See Celotex Corp. v. Catrett*, 477 U.S. 317 at 322-24 (Brennan, J., dissenting).

[140] *See Campbell v. Lelong Tr.*, 327 So. 2d 533 (La. App. 2d Cir. 1976) (citing *Casadaban v. Bel Chemical & Supply Company, Inc.*, 322 So.2d 854 (La. App., 1 Cir. 1975).

[141] R. Doc. 92 at pp. 4-5.

23

damages for breach of contract claims when pecuniary damages could not be ascertained,[142] and others have denied summary judgment when a technical contract violation could support nominal damages.[143]

"Unlike the common law, which, at least theoretically, has gone as far as establishing a sort of presumption that the infringement of a right always causes some damage, which was made clearer where breach of contract is concerned, the civilian tradition has strongly adhered to the precept that where there is no damage there is no reason for the law to intervene."[144] Thus, in the French civil law tradition, "the mere failure to perform a conventional obligation cannot by itself give rise to reparation because, for that purpose, it is necessary for the obligee to have sustained actual damage."[145] Louisiana courts have not diverged from the civil law tradition in this respect.

Ocean Harbor, however, points to the 1905 case of *Green v. Farmers Consolidated Dairy Co.* for the assertion that "when a contract has been breached and no actual damages are proven, nominal damages may be awarded for the resulting technical injury."[146] Ocean Harbor also cites to an 1895 case, *Judice v. Southern Pacific Company*, arguing it holds that, "in the absence of proof of actual loss, damages remain by implication for the technical violation of the contract."[147]

Contrary to Ocean Harbor's interpretation of these cases, Louisiana courts have not allowed a claim for only nominal damages to suffice for a breach of contract. In *Judice*, the plaintiff, a railroad passenger, sued a railroad company after the conductor failed to

---

[142] *Id. See e.g., Green v. Farmers' Consol. Dairy Co.*, 113 La. 869, 37 So. 858 (1905).
[143] R. Doc. 92 at p. 5; *See e.g., Labouliere v. Our Lady of the Lake Found.*, No. CV 16-785-SDD-SDJ, 2020 WL 1435156 at *3 (M.D. La. Mar. 23, 2020).
[144] RONALD J. SCALISE JR. 6 La. Civ. L. Treatise, Law Of Obligations § 7.10 (2d ed.)
[145] *Id.* at § 7.11.
[146] R. Doc. 92 at p. 4. *See Green v. Farmers' Consol. Dairy Co.*, 37 So. 858, 859 (1905).
[147] R. Doc. 92 at p. 5. *See Judice v. S. Pac. Co.*, 16 So. 816 (1895).

call her ticket at her chosen station, consequently dropping her over four miles away from her intended destination.[148] The Louisiana Supreme Court found that the conductor's violation of the contract resulted in the superadded four mile journey and so constituted damages of "time and inconvenience."[149] Since the pecuniary damages stemming from this time and inconvenience were unproven, the Louisiana Supreme Court allowed an award of nominal damages.[150] In the *Green* case, the Louisiana Supreme Court affirmed an award of nominal damages for a breach of contract claim despite the "quantum of damages" being unproven.[151] In the 1928 case of *Germann v. 557 Tire Co.* the Louisiana Supreme Court applied *Green*, stating it stood for the proposition that "the bare fact that a plaintiff cannot establish exactly the amount of damages suffered by him and occasioned by the fault of the defendant will not suffice to discharge said defendant, *when it is clear that plaintiff has in fact suffered some damages*."[152] Neither the Court nor Ocean Harbor has found any case applying these principles since 1928, and the Court doubts that a modern Louisiana court would.

Even applying *Judice*, *Green*, and *Germann*, under Louisiana law, an award of nominal damages suffices for the damages element of a breach of contract claim only where (1) it is clear the plaintiff has in fact suffered some damages and (2) the quantum of damages are not ascertainable. Ocean Harbor fails to meet this standard. First, for the reasons stated above, Ocean Harbor's claimed litigation expenses are not recoverable damages, and cannot support its nominal damages claim. Second, its claims for direct damages stemming from the O'Sheas' alleged breach of the confidentiality provision are

---

[148] *Judice*, 16 So. at 816-817.
[149] *Id.*
[150] *Id.* at 817-18.
[151] *Green*, 37 So. at 859.
[152] Germann v. 557 Tire Co., 120 So. 13, 15 (1928) (emphasis added).

25

speculative and conjectural, and they, too, fail to support the nominal damages claim. There is a distinction between  speculative damages and unascertainable damages. In both cases Ocean Harbor cites, *Judice* and *Green*, it was clear that *some* pecuniary harm had resulted, and nominal damages were permitted though a precise quantum was lacking. Ocean Harbor, by contrast, has made no such showing. As a matter of Louisiana law, its speculative claims are not sufficient for an award of nominal damages.

Nor does the other case Ocean Harbor cites compel any other result. Ocean Harbor cites to *Labouliere v. Our Lady of the Lake Foundation*, in which the Middle District of Louisiana denied summary judgment for claims brought under the federal Rehabilitation Act of 1973 and Patient Protection and Affordable Care Act. [153] In that case, the plaintiff had originally sought compensatory damages, which were deemed unavailable under that federal statute. The Middle District found that summary judgment was nonetheless improper because the plaintiff may be entitled to recover nominal damages.[154] *Labouliere* is distinguishable, because its nominal damages analysis applies to the federal Rehabilitation Act and Patient Protection and Affordable Care Act, not a state law breach of contract claim. Accordingly, Ocean Harbor's argument that it may be entitled to nominal damages, thereby creating a disputed issue of fact, fails.

To survive summary judgment on its breach of contract counterclaim, Ocean Harbor must show it is capable of proving at trial all three elements: formation, breach, and recoverable damages. While Ocean Harbor has shown formation of a contract, and likely will be capable at trial of proving breach, Ocean Harbor has produced no competent

---

[153] *Labouliere v. Our Lady of the Lake Found.*, No. CV 16-785-SDD-SDJ, 2020 WL 1435156 at *3 (M.D. La. Mar. 23, 2020). *See Jane Cummings v. Premier Rehab Keller, P.L.L.C.* 948 F.3d 673 (5th Cir. 2020).

[154] *Labouliere v. Our Lady of the Lake Found.*, No. CV 16-785-SDD-SDJ, 2020 WL 1435156 at *3 (M.D. La. Mar. 23, 2020); *see Francois v. Our Lady of the Lake Found.*, No. CV 17-393-SDD-SDJ, 2020 WL 6066167 (M.D. La. Oct. 14, 2020) *aff'd sub nom. Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370 (5th Cir. 2021) (discussing *Labouliere*).

evidence to show that it suffered recoverable damages. Lacking evidence to prove at least one of the elements of its claim, Ocean Harbor will not be able to succeed on its breach of contract claim at trial. As such, Ocean Harbor's counterclaim fails as a matter of law.

The O'Sheas have established that Ocean Harbor will not be able to meet its burden at trial of proving all the essential elements of its breach of contract counterclaim. There are no disputes of material fact, and the O'Sheas are entitled to judgment as a matter of law in their favor and against Ocean Harbor on the counterclaim.

Accordingly,

### CONCLUSION

**IT IS ORDERED** that O'Sheas' Motion for Summary Judgment is **GRANTED**.

**New Orleans, Louisiana, this 3rd day of August, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**